UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IN RE:                                  CASE NO.: 19-47298-ess
                                          CHAPTER: 11

1568A Prospect Place, Inc.,

                                        HON. JUDGE.:
           Debtor                     Elizabeth S. Strong

                                          HEARING DATE: March 13, 2020 at 10:00am

-----------------------------------------------------------------X

## NOTICE OF MOTION
## FOR IN REM RELIEF FROM AUTOMATIC STAY

     **PLEASE TAKE NOTICE**, that upon the application of NCG 2017 VI LLC, the undersigned shall move this Court for an Order: (i) granting in rem relief with respect to certain real property having an address of 1568A Prospect Place, Brooklyn, New York 11233 a period of at least two years pursuant to 11 U.S.C. § 362(d)(4); (ii) vacating the automatic stay pursuant to 11 U.S.C. § 362(d)(1); (iii) granting waiver of the 14 day stay invoked pursuant to F.R.B.P 4001(a)(3); and (iv) for such other and further relief as is just and proper.

     This motion shall be heard at the United States Bankruptcy Court, Eastern District, 290 Federal Plaza, Central Islip, NY 11722, on March 13, 2020 at 10:00am or as soon thereafter as counsel may be heard.

[SPACE INTENTIONALLY LEFT BLANK]

**PLEASE TAKE FURTHER NOTICE**, that answering affidavits, if any, must be served so as to be received not later than seven (7) days before the return date of this motion.

Dated: February 21, 2020
Garden City, New York

By: /s/ Richard Postiglione
Richard Postiglione, Esq.
FRIEDMAN VARTOLO LLP
1325 Franklin Avenue, Suite 230
Garden City, New York 11530
T: (212) 471-5100
F: (212) 471-5150

To:

1568A Prospect Place, Inc.
1568A Prospect Place
Brooklyn, NY 11214
***Debtor***

Ezekiel Akande
1568A Prospect Place
Brooklyn, New York 11233
***Borrower***

Ehsanul Habib
Law Office of Ehsanul Habib
118-21 Queens Blvd.
Suite 603
Forest Hills, NY 11375
***Debtor's Attorney***

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
***U.S. Trustee***

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

IN RE:                                           CASE NO.: 19-47298-ess
                                                 CHAPTER: 11
1568A Prospect Place, Inc.,
                                                 HON. JUDGE.:
                        Debtor                   Elizabeth S. Strong

                                                 HEARING DATE: March 13, 2020 at
                                                 10:00am

----------------------------------------------------------------X


## MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY


Richard Postiglione, an attorney at law duly admitted to practice before the Courts of the

State of New York and the U.S. District for the Eastern District of New York, hereby affirms the

following to be true under penalty of perjury:

NCG 2017 VI LLC (hereinafter "Creditor" or "Movant"), hereby moves this Court for an

Order: (i) granting in rem relief with respect to certain real property having an address of 1568A

Prospect Place, Brooklyn, New York 11233 a period of at least two years pursuant to 11 U.S.C. §

362(d)(4); (ii) vacating the automatic stay pursuant to 11 U.S.C. § 362(d)(1); (iii) granting

waiver of the 14 day stay invoked pursuant to F.R.B.P 4001(a)(3); and (iv) for such other and

further relief as is just and proper. In support of the motion (hereinafter the "Motion for Relief"),

Creditor respectfully submits that:


## BACKGROUND


1.      Movant is the holder of a Note executed by Ezekiel Akande (the "Borrower") and

dated May 18, 2006, whereby the Borrower promised to repay $541,800.00 plus interest to First

Meridian Mortgage, a limited liability company (the "Original Lender"). To secure the repayment of the Note, the Borrower executed a Mortgage in favor of Mortgage Electronic Registration Systems Inc., as nominee for the Original Lender, encumbering the real property located 1568A Prospect Place, Brooklyn, New York 11233(the "Property"), which was recorded on May 30, 2006 in the Office of the City Register of the City of New York under CRFN 2006000297985. The Mortgage was ultimately assigned to Movant by an Assignment of Mortgage dated April 2, 2018. Copies of the Note, Mortgage, and Assignments of Mortgage are annexed hereto as **Exhibit A.**

2.      As the Borrower became delinquent under the terms of the Note and Mortgage a foreclosure action was commenced in the Supreme Court of the State of New York, County of Kings under index number 26399/2009. Subsequently, a Judgment of Foreclosure and Sale (the "JFS") was entered on October 8, 2019. A copy of the entered JFS is annexed hereto as **Exhibit B.**

3.      On February 1, 2019, the Borrower file a voluntary petition for relief under Chapter 13 of the Bankruptcy Code under case 19-bk-00634, effectively staying Movant's foreclosure action. That case was later dismissed on April 1, 2019. A copy of the PACER Docket is annexed hereto as **Exhibit C**.

4.      Upon dismissal, Movant continued with its foreclosure action. However, on June 5, 2019, the Borrower filed another voluntary petition for relief under Chapter 13 of the Bankruptcy Code under case 19-43483-ess, again staying the foreclosure action. That case was automatically dismissed on July 22,2019. A copy of the PACER docket is annexed hereto as **Exhibit D**.

5.      Upon dismissal Movant proceeded with its foreclosure action and scheduled a sale of the property for December 5, 2019. A copy of the Notice of Sale is annexed hereto as **Exhibit**

**E**. However, on December 4, 2019, the eve of Movant's scheduled sale, the Debtor, a corporation

of which the Borrower is the President, filed the current voluntary petition for relief under Chapter

11 of the Bankruptcy Code under case 19-47298-ess, effectively staying the foreclosure sale. The

instant case is the third filed by either the Debtor or the Borrower in an attempt to delay Movant

in exercising its foreclosure rights. Accordingly, Movant now seeks an Order granting in rem relief

from stay with respect to the property, pursuant to 11 U.S.C. § 362(d)(4).

### CREDITOR IS ENTITLED TO IN REM RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4)

6.      Pursuant to 11 U.S.C. § 362(d)(4), courts are empowered to grant in rem relief from

a stay affecting a creditor's property, such that any and all future filings by any party with a claimed

interest in the property will not operate as an automatic stay for a period of two years.  *See, e.g.,

In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010); *In re Blair*, 2009 WL 5203738, *4 (Bankr.

E.D.N.Y. 2009); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009).

7.      Because the stay attaches to the property, rather than to the filing parties, "in rem

relief is a particularly effective method to combat tag-team serial filers who seek to prevent

foreclosures." *In re Selinsky*, 365 B.R. 260, 264 (Bankr. S.D.Fla. 2007); *see In re Roeben*, 294

B.R. 840, 846 (Bankr. E.D.Ark. 2003); *In re Graham*, 1998 WL 473051, *2 (Bankr. E.D.Penn.

1998).

8.      To obtain in rem relief, a creditor must provide evidence that: (i) a debtor or a group

of debtors has made prior bankruptcy filings as part of a scheme; (ii) the object of which was to

delay, hinder, or defraud creditors; and (iii) which involves either the transfer of some interest in

the real property without the secured creditor's consent or court approval or multiple bankruptcy

filings affecting the property.  *See In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870-71 (7th

Cir. BAP 2012).   Further, it is well-settled that the mere timing and filing of multiple prior

bankruptcy cases by related debtors permits the inference of a scheme to hinder, delay, and defraud a creditor. *See, e.g., Blair*, 2009 WL 5203738 at *4, *citing Montalvo*, 416 B.R. at 387.

9.      Analyzing an identical set of circumstance, the Court in *Blair* (*id*. at *4-5) granted in rem relief and found that:

> Here, Debtors have neither filed nor confirmed a chapter 13 plan. None of their chapter 13 cases were prosecuted to any meaningful extent. The timing and sequence of the filings is also significant. Each was filed on the eve of or shortly before significant events affecting the Property. The uncontroverted record of the filings and lack of any good faith prosecution of each of Debtors' prior cases allows this Court to draw a permissible inference and find that the instant petitions were part of a scheme of Debtor to hinder, delay, and defraud [creditor] BAC.

> Therefore, this Court will enter an Order such that any future bankruptcy filings by either of the Debtors, or any other person having an interest in the Property, will not operate as a stay of any action against the Property for a period of two years after the date of the entry of the orders hereon.

10.     The Borrower has not made a meaningful attempt to prosecute any of his prior bankruptcy cases. It can be assumed that the Borrower strategically chose not to file this current bankruptcy under his own name because that would have been his third filing within one year, which would not have imposed an automatic stay pursuant to 11 U.S.C. 362 (c)(4)(A)(i). Therefore, it can also be assumed that this current filing was made by 1568A Prospect Place, Inc., with the sole purpose of stalling Movant's foreclosure action.

11.     Accordingly, Movant is irrefutably entitled to in rem relief from any further bankruptcy filings with respect to the Mortgaged Premises for a period of at least two years pursuant to 11 U.S.C. § 362(d)(4)(B).

## CREDITOR IS ENTITLED TO RELIEF FROM <u>ANY STAY PURSUANT TO 11 U.S.C. § 362(d)(1)</u>

12.     Movant is also entitled to relief from the automatic due to the lack of post-petition payments received.

13.     11 U.S.C. § 362(d)(1) permits courts to provide relief from an automatic stay where any party in interest lacks adequate protection.

14.     Specifically, 11 U.S.C. § 362(d)(1) provides that:

> (d)     On the request of a party in interest and after notice and a hearing the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1)     For cause, including the lack of adequate protection of an interest in property of such a party in interest.

15.     While the term "cause" is not defined in the Bankruptcy Code, "it is well established under decisional law that a debtor's failure to make post-petition mortgage payments in bankruptcy rehabilitation proceedings can constitute cause for relief under § 362(d)(1)." *In re Uvaydov*, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006); s*ee, e.g., In re Ellis*, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985); *In re James River Assocs.*, 148 N.R. 790, 797 (Bankr. E.D.Va. 1992); *In re Davis*, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986). Moreover, the failure to provide adequate protection is grounds, in and of itself, for relief from a stay.

16.     The Debtor is not a party to any of the underlying promissory instruments and is not responsible for making payment. In the absence of a contractual relationship between parties, Movant need not provide the typical district worksheet.

17.     Accordingly, because Creditor lacks adequate protection with respect to the Subject Property, Creditor is irrefutably entitled to relief from any automatic stay which may be in effect pursuant to 11 U.S.C. § 362(d)(1).

18.     Grounds exist to vacate the stay in Debtor's case and Movant therefore requests that the automatic stay imposed under Section 362(a) be modified and terminated for cause in accordance with Section 362(d) of the Bankruptcy Code to permit Movant to pursue their rights

under the Mortgage and applicable law, including without limitation, the commencement and consummation of a foreclosure action and/or eviction proceeding.

## CREDITOR IS ENTITLED TO A WAIVER OF THE STAY PROVISION OF FED. R. BANKR. PR. 4001(a)(3)

19.     Fed. R. Bank. Pr. 4001(a)(3) provides that "any order granting movant relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order unless the court orders otherwise."

20.     In light of the history of filings and the negative impact on Creditor's lawful right to sell the Mortgaged Premises pursuant to the Final Judgment (*see* Exhibit B), no legitimate purpose could be served by staying the requested relief any longer. The debtor clearly has no intention of participating in the bankruptcy process and therefore should not reap its benefits. Therefore, Creditor is entitled to a waiver of the stay provision of Fed. R. Bankr. Pr. 4001(a)(3).

**WHEREFORE**, it is respectfully submitted that this Court should grant Creditor's Motion for Relief in all respects, along with such other and further relief as is deemed to be just, proper, and equitable.

Dated: February 21, 2020
Garden City, New York

By: /s/ Richard Postiglione
Richard Postiglione, Esq.
FRIEDMAN VARTOLO, LLP
1325 Franklin Avenue, Suite 230
Garden City, New York 11530
T: (212) 471-5100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

IN RE:                                CASE NO.: 19-47298-ess
                                           CHAPTER: 11

1568A Prospect Place, Inc.,

                                HON. JUDGE.:
           Debtor                  Elizabeth S. Strong


----------------------------------------------------------------X


### ORDER GRANTING IN REM RELIEF

**WHEREAS**, on or about December 4, 2019, this case commenced upon the filing of a Voluntary Petition for Bankruptcy under Chapter 13 of the United States Bankruptcy Code in this Court; and

**WHEREAS**, on or about February 21, 2020, a motion was filed by NCG 2017 VI LLC (with any subsequent successor or assign, the "Movant") seeking an Order granting In-Rem Relief from Automatic Stay; and

**WHEREAS**, on or about March 13, 2020 at 10:00am, this Court held a hearing on the motion, at which counsel for the Movant appeared; and

**NOW, THEREFORE**, it is _**hereby**_

**ORDERED**, that the automatic stay under 11 U.S.C. § 362(a) is modified under 11 U.S.C.§ 362(d)(1) as to the Movant to permit Movant to pursue its rights under applicable law with respect to the Property known as 1568A Prospect Place, Brooklyn, New York 11233; and it is further

**ORDERED,** that pursuant to 11 U.S.C. § 362(d)(4), the stay imposed under 11 U.S.C. § 362(a) is modified as to the Movant's interest in the property known as 1568A Prospect Place, Brooklyn, New York 11233 (County: King; Block: 1369; Lot: 0114) (the "Property") such that

if this Order is recorded in compliance with applicable state laws governing notices of interest or liens in real property, this Order shall be binding in any future filing in any case under the Bankruptcy Code purporting to affect the property for a period of two years from the date of this Order, except that a debtor in a subsequent case under this title may move for relief from such Order based upon a changed circumstances or for good cause shown, after notice and a hearing; and it is further

**ORDERED** that the automatic stay, heretofore in effect pursuant to 11 U.S.C. § 362(a) is hereby modified for cause pursuant to 11 U.S.C. § 362(d)(1) as to Movant, its agents, assigns or successors in interest, so that Movant, its agents, assigns or successors in interest, may pursue its rights under applicable law with respect to the property; and it is further

**ORDERED** that the 14 day stay invoked pursuant to F.R.B.P. 4001(a)(3) is waived and this order is effective upon the signing of this order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

IN RE:                                          CASE NO.: 19-47298-ess
                                                CHAPTER: 11

   1568A Prospect Place, Inc.,

          Debtor          HON. JUDGE.:
                                                Elizabeth S. Strong

----------------------------------------------------------------X

## <u>CERTIFICATE OF SERVICE</u>

On February 21, 2020, I served a true copy of the annexed **MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY REGARDING REAL PROPERTY** by mailing the same by First Class Mail in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee, and the property address as indicated on the attached Service List annexed hereto.

Dated: February 21, 2020
Garden City, New York

                      By: <u>/s/ Richard Postiglione</u>
                      Richard Postiglione, Esq.
                      1325 Franklin Avenue, Suite 230
                      Garden City, New York 11530

**SERVICE LIST**

1568A Prospect Place, Inc.
1568A Prospect Place
Brooklyn, NY 11214
***Debtor***

Ezekiel Akande
1568A Prospect Place
Brooklyn, New York 11233
***Borrower***

Ehsanul Habib
Law Office of Ehsanul Habib
118-21 Queens Blvd.
Suite 603
Forest Hills, NY 11375
***Debtor's Attorney***

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
***U.S. Trustee***

# EXHIBIT A

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)**
**(Interest Only ARM)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MAY 18, 2006
[Date]                                         [City]                              [State]

1568 A PROSPECT PLACE, BROOKLYN, NEW YORK 11233
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $541,800.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is FIRST MERIDIAN MORTGAGE, A LIMITED LIABILITY COMPANY

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. Every month thereafter I will pay principal and interest by making payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note. The principal and interest payment I may change as the interest rate I pay changes pursuant to Section 4 of this Note.

I will make my monthly payments on the 1st day of each month beginning on JULY 1 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO BOX 100886, BROOKLYN, NEW YORK 11210

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $3,160.50 . This amount may change.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)          Page 1 of 5
DLLMC IO NOTE 03/07/06

DocMagicⒺPhone: 800-649-1362
www.docmagic.com

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of JUNE, 2011 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR AND 750/1000 percentage points ( 4.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Except as provided in Section 3(A) above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.000 % or less than 4.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

DocMagic **** 800-669-1362
www.docmagic.com

**8. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
DLMIC 10 NOTE  03/01/08                Page 3 of 5

DocMagic EForms  800-649-1362
www.docmagic.com

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (i) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (ii) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DocMagic eForms 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 5/18/06 (Seal)      _____ (Seal)
EZEKIEL AKANDE          -Borrower                                -Borrower


_____ (Seal)      _____ (Seal)
                     -Borrower                                -Borrower


_____ (Seal)      _____ (Seal)
                     -Borrower                                -Borrower


[Sign Original Only]

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
DS-MC 10 NOTE  03/03/06                    Page 5 of 5

DocMagic 800-649-1362
www.docmagic.com

## Allonge to Promissory Note

Without recourse pay to the order of:

CitiMortgage, Inc

By: _____

Name: _____Joseph Shapiro_____

Title: _____Vice President_____

Company:____First Meridian Mortgage____

| | |
|---|---|
| Borrower Name: | Ezekiel Akande |
| Property Address: | 1568 A Prospect Place |
| | Brooklyn, NY 11233 |
| Loan Amount: | $541,800 |
| Loan Number: | ▓▓▓▓▓▓▓▓ |
| Note Date: | 05/18/06 |

BY: 

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: EZEKIEL ARANDE

ORIGINAL PRINCIPAL BALANCE: $541,800.00

PROPERTY ADDRESS: 1568 A PROSPECT PLACE, BROOKLYN, NY 11233

PAY TO THE ORDER OF:

## Bayview Loan Servicing, LLC

WITHOUT RECOURSE
CITMORTGAGE, INC., BY BAYVIEW LOAN SERVICING, LLC, AS ATTORNEY IN FACT

BY:

NAME: JASON JAMES
TITLE: Assistant Vice-President

BY: ████████

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: EZEKIEL ARANDE.

ORIGINAL PRINCIPAL BALANCE: $541,800.00

PROPERTY ADDRESS: 1568 A PROSPECT PLACE, BROOKLYN, NY 11233

PAY TO THE ORDER OF:

WITHOUT RECOURSE
BAYVIEW LOAN SERVICING, LLC

BY: _____

NAME: ROBERT O. HALL
TITLE: Vice President

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BE

BORROWER:    EZEKIEL AKANDE

CO-BORROWER:

CO-BORROWER:

OBAL:        $541,800.00

NOTE DATE    5/18/2006

ADDRESS:     1568 A PROSPECT PLACE BROOKLYN, NY 11233

PAY TO THE ORDER OF:

BOF II 2011-2NPL, LLC

WITHOUT RECOURSE:

BAYVIEW LOAN SERVICING, LLC

BY:_____

NAME:    ESLOAN SOTOLONGO

TITLE:   Assistant Vice-President

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BE

BORROWER:     EZEKIEL AKANDE

CO-BORROWER:

CO-BORROWER:

OBAL:         $541,800.00

NOTE DATE     5/18/2006

ADDRESS:      1568 A PROSPECT PLACE BROOKLYN, NY 11233

PAY TO THE ORDER OF:

NCG 2017 VI LLC

WITHOUT RECOURSE:

BOF II 2011-2NPL, LLC

BY: _____

NAME:   ESLOAN SOTOLONGO

TITLE:  Assistant Vice-President

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

## RECORDING AND ENDORSEMENT COVER PAGE

| | | |
|---|---|---|
| Document ID: 2006052600343002 | Document Date: 05-18-2006 | Preparation Date: 05-26-2006 |

Document Type: MORTGAGE
Document Page Count: 24

**PRESENTER:**
SUPERIOR ABSTRACT CORPORATION a/a/f
UGT INSURANCE COMPANY (UGTK 704729)
105 COURT STREET SUITE 500A
BROOKLYN, NY 11201
718-522-0366

**RETURN TO:**
STEWART MORTGAGE INFO
ATTN: LANIECE LAMELL
3910 KIRBY DRIVE #300
HOUSTON, TX 77098

### PROPERTY DATA

Borough: BROOKLYN   Block: 1369   Lot: 114   Entire Lot   Unit   Address: 1566A PROSPECT PLACE
Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN _____ or Document ID _____ or _____ Year _____ Reel _____ Page _____ or File Number _____

### PARTIES

**MORTGAGER/BORROWER:**
EZEKIEL AKANDE
220 HILLCREST ROAD
RIDGEWOOD, NJ 07450

**MORTGAGEE/LENDER:**
MERS
P.O. BOX 2026
FLINT, MI 48501

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 157.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 541,800.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 541,800.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,709.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 6,095.25 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 1,354.50 | | |
| MTA: | $ | 1,625.40 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 11,784.15 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed       05-30-2006 12:01
City Register File No.(CRFN):
2006000297985

*City Register Official Signature*

RECORDED BY
SUPERIOR ABSTRACT CORPORATION
195 COURT STREET
BROOKLYN, NY 11201
(718) 601-1173

Mortgage Recording Tax:

After Recording Return To:
STEWART MORTGAGE INFO   ATTN: LANIECE LAMELL
9910 KIRBY DRIVE #300
HOUSTON, TEXAS 77098
Loan Number: ██████████

Block 1369
Lot 114
co, KINGS

——————— [Space Above This Line For Recording Data] ———————

PAY
1/17/8/15

# MORTGAGE

MIN: ██████████████████

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated MAY 18, 2006 , together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower." EZEKIEL AKANDE

whose address is  220 HILLCREST ROAD, RIDGEWOOD, NEW JERSEY 07450

sometimes will be called "Borrower"

and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

(D) "Lender." FIRST MERIDIAN MORTGAGE, A LIMITED LIABILITY COMPANY

will be called "Lender." Lender is a corporation or association which exists under the laws of NEW JERSEY
Lender's address is  2636 NOSTRAND AVENUE, BROOKLYN, NEW YORK 11210

(E) "Note." The note signed by Borrower and dated MAY 18, 2006 , will be called the "Note." The Note shows that I owe Lender FIVE HUNDRED FORTY-ONE THOUSAND EIGHT HUNDRED AND 00/100                    Dollars (U.S. $ 541,800.00 ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by JUNE 1, 2036

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

Section:              Block:              Lot(s)/Unit No(s).:

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 1 of 16
DocMagic ᴇFᴏʀᴍs 800-649-1362
www.docmagic.com

(G) "**Loan.**" The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Sums Secured.**" The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "**Riders.**" All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider   ☐ Planned Unit Development Rider
☐ Balloon Rider           ☐ Biweekly Payment Rider
☒ 1-4 Family Rider        ☐ Second Home Rider
☐ Condominium Rider       ☐ Other(s) [specify]

(J) "**Applicable Law.**" All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "**Community Association Dues, Fees, and Assessments.**" All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "**Electronic Funds Transfer.**" "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items.**" Those items that are described in Section 3 will be called "Escrow Items."

(N) "**Miscellaneous Proceeds.**" "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "**Mortgage Insurance.**" "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment.**" The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "**RESPA.**" "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

EA

DocMagic ⬥ 800-649-1362
www.docmagic.com

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at

1968 A PROSPECT PLACE
[Street]
, New York   11233
[Zip Code]

BROOKLYN
[City, Town or Village]

This Property is in   KINGS   County.  It has the following legal description:
SEE ATTACHED SCHEDULES

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT · MERS
Form 3033 01/01
Page 3 of 16
DocMagic eForms  800-649-1362
www.docmagic.com

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

TENTATIVE LOT 114

BEGINNING at a point on the Southerly side of Prospect Place, distant 164.34 feet Easterly from the corner formed by the intersection of the Easterly side of Buffalo Avenue with the Southerly side of Propsect Place; and

RUNNING THENCE Southerly parallel with Buffalo Avenue and part of the distance through a party wall, 127.79 feet;

THENCE Easterly at right angles to the last mentioned course, 36.25 feet;

THENCE Northerly forming an interior angle of 89 degrees 13 minutes 14 seconds with the last mentioned course, 130.08 feet to the Southerly side of Prospect Place;

THENCE Westerly along the Southerly side of Prospect Place, 11.91 feet to the point or place of BEGINNING.

SAID PREMISES KNOWN AS: 1588A Prospect Place, Brooklyn, New York

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS
I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payments of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (i) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (ii) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, there there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.    Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.    Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property,

or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

DocMagic EForms 800-649-1362
www.docmagic.com

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage

insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not increase the amount that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given to this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the

Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises

and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection to any notice address if sent by other means, given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights if the Property is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct any failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time

DocMagic 800-649-1362
www.docmagic.com

period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 16 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)       _____ (Seal)
EZEKIEL AKANDE            -Borrower                                -Borrower


_____ (Seal)       _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)       _____ (Seal)
                         -Borrower                                -Borrower


Witness:                               Witness:

_____              _____

State of New York }
                 } ss.
County of Queens }

On the 18th day of May, in the year 2006, before me,
the undersigned, personally appeared EZEKIEL ARANDE

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

BRADLEY P. WEISS
Notary Public, State of New York
No. 01WE6001724
Qualified in Suffolk County
Commission Expires Sept. 7, 2__0

_____
Notary Public State of New York

_____
Print or Type Name

SEAL

(Seal, If any)                    My commission expires:

Tax Map Information No.:

ZA
NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 15 of 15

DocMagic ☎800-649-1362
www.docmagic.com

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 18th day of MAY, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to FIRST MERIDIAN MORTGAGE, A LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1568 A PROSPECT PLACE, BROOKLYN, NEW YORK 11233
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E.** **"BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F.** **BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G.** **ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.** **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
EZEKIEL AKANDE                -Borrower                                            -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                            -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                            -Borrower


MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                    Page 3 of 3

DocMagic ☎ 800-649-1362
www.docmagic.com

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)
### (Interest Only ARM)

THIS ADJUSTABLE RATE RIDER is made this 18th day of MAY 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FIRST MERIDIAN MORTGAGE, A LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and located at:

1568 A PROSPECT PLACE, BROOKLYN, NEW YORK 11233
(Property Address)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.000 %. The Note also provides for changes in the interest rate and the monthly payments, as follows:

## 3. PAYMENTS
(A) Time and Place of Payments
I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") In the amount sufficient to pay interest as it accrues. Every month thereafter I will pay principal and interest by making payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note. The principal and interest payment I pay may change as the interest rate I pay changes pursuant to Section 4 of this Note.
I will make my monthly payments on the 1st day of each month beginning on JULY 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied *to* interest before Principal.
If, on JUNE 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
DL//MC IO RIDER 02/01/06     Page 1 of 4

DocMagic ☎800.649.1362
www.docmagic.com

I will make my monthly payments at PO BOX 100886, BROOKLYN, NEW YORK 11210

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $3,160.50. This amount may change.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Date

The interest rate I will pay may change on the 1st day of JUNE 1, 2011, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR AND 750/1000 percentage points ( 4.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Except as provided in Section 3(A) above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.000 % or less than 4.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.000 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

DocMagic @Settle 800-649-1362
www.docmagic.com

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
DLJ/AC LD RIDER 03/01/06

DocMagic@Exceed 800-649-1362
www.docmagic.com

Page 3 of 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
EZEKIEL AKANDE            -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)   Page 4 of 4
DLARC 10 RIDER 03/01/06

DocMagic eForms 800-649-1362
www.docmagic.com

# ADJUSTABLE RATE RIDER
**(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)**
**(Interest Only ARM)**

THIS ADJUSTABLE RATE RIDER is made this 18th day of MAY 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FIRST MERIDIAN MORTGAGE, A LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and located at:

1568 A PROSPECT PLACE, BROOKLYN, NEW YORK 11233
[Property Address]

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.060 %. The Note also provides for changes in the interest rate and the monthly payments, as follows:

## 3. PAYMENTS
(A) Time and Place of Payments
I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. Every month thereafter I will pay principal and interest by making payments in an amount sufficient to fully amortize the outstanding principal balance of this Note at the end of the Interest-Only Period over the remaining term of the Note. The principal and interest payment I pay may change as the interest rate I pay changes pursuant to Section 4 of this Note.

I will make my monthly payments on the 1st day of each month beginning on JULY 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."



DocMagic 800-649-1362
www.docmagic.com


**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



**RECORDING AND ENDORSEMENT COVER PAGE**

Preparation Date: 11-11-2009

**Document ID:** 2009111100990001    Document Date: 08-25-2009
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| THRESHOLD LAND, INC.,<br>PICK UP BY MICHAEL FINN<br>584 MAIN STREET<br>ISLIP, NY 11751<br>631-224-1345<br>ctorres@thresholdland.com | THRESHOLD LAND, INC.,<br>PICK UP BY MICHAEL FINN<br>584 MAIN STREET<br>ISLIP, NY 11751<br>631-224-1345<br>ctorres@thresholdland.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1369 | 114 Entire Lot | | 1568A PROSPECT PLACE |

**Property Type:** 1- 2 FAM WITH ATTCH GAR &/OR VACANT LAND

**CROSS REFERENCE DATA**

CRFN: 2006000297985

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>3300 SOUTHWEST 34TH AVENUE, SUITE 101<br>OCALA, FL 34474 | BAYVIEW LOAN SERVICING, LLC<br>4425 PONCE DE LEON BLVD<br>CORAL GABLES, FL 33146 |

x  Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    11-18-2009 14:42
City Register File No.(CRFN):
                    2009000379063

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2009111100990001

Preparation Date: 11-11-2009

Document ID: 2009111100990001          Document Date: 08-25-2009
Document Type: ASSIGNMENT, MORTGAGE

---

**PARTIES**
**ASSIGNOR/OLD LENDER:**
AS NOMINEE FOR FIRST MERIDIAN MORTGAGE
3300 SOUTHWEST 34TH AVENUE, SUITE 101
OCALA, FL 34474



ORIGINAL

PREPARED BY:
Bayview Financial, L.P.
Anissa Hickerson
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables, Florida 33146

WHEN RECORDED RETURN TO:
Bayview Financial, L.P.
Attn: Jennifer McGovern
4425 Ponce De Leon Blvd, 5th Floor
Coral Gables, Florida 33146

BV LOAN NO: ▒▒▒▒▒.
BORROWER: AKANDE
LOAN AMOUNT: $541,800.00

## Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned as ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to

**Bayview Loan Servicing, LLC a Delaware limited liability company**
**4425 Ponce de Leon Blvd., Coral Gables, FL 33146**

("Assignee/Grantee") all beneficial interest under that certain Mortgage dated:   5/18/2006 and executed by: **EZEKIEL AKANDE**, as borrower(s) to: Mortgage Electronic Registration Systems, Inc. as nominee for FIRST MERIDIAN MORTGAGE as Original Lender and certain Mortgage recorded in CRFN: 2006000297985, recorded on: 05/30/2006, in the Official Records of **Kings** County, State of **NY**, covering the following described property:

**1568 A PROSPECT PLACE, BROOKLYN, NY 11233**
**Block: 1369, Lot: 114**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Document.

"THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF NEW SECTION 275 OF THE REAL PROPERTY LAW BECAUSE IT IS AN ASSIGNMENT WITH THE SECONDARY MORTAGE MARKET".

Dated: August 25, 2009

ASSIGNOR: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC. as nominee for FIRST
MERIDIAN MORTGAGE
P.O. Box 2026, FLINT, MI 48501-2026

By: _____
ROBERT G. HALL, Assistant Secretary

STATE OF FLORIDA        }
                          } SS

COUNTY OF MIAMI-DADE      }

On August 25, 2009, before me, the undersigned, personally appeared, **ROBERT G. HALL**, Assistant Secretary, of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.** as nominee for **FIRST MERIDIAN MORTGAGE**, whose address is **P.O. Box 2026, Flint, MI 48501-2026**, personally known to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by the individual (s) acted, executed the instrument and that such individual made such appearance before the undersigned in the City of **Coral Gables, Florida.**





ANISSA HICKERSON
NOTARY PUBLIC - STATE OF FLORIDA
Commission #DD614525
Expires: NOV. 14, 2010

By: _____

Notary Public: ANISSA HICKERSON
Commission No.: DD 614525
Expiration Date: 11/14/2010

SEAL

Recording Requested By:
NCG 2017 VI LLC

When Recorded Mail To:
NCG 2017 VI LLC
3611 14TH AVE
STE 223C
BROOKLYN, NY, 11218

Loan # ████████████
TS Ref # ████████████
Client Ref # ████████████

## CORPORATE ASSIGNMENT OF MORTGAGE

NY/KINGS

Assignment Prepared on: March 23, 2018

**ASSIGNOR:** BAYVIEW LOAN SERVICING, LLC, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE:** BOF II 2011-2NPL, LLC, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated 5/18/2006, in the amount of $541,800.00, executed by EZEKIEL AKANDE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MERIDIAN MORTGAGE, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS and Recorded: 5/30/2006, Instrument #: 2006000297985 in KINGS County, State of New York.

Property Address: 1568 A PROSPECT PLACE, BROOKLYN, NY, 11233
Block: 1369 / Lot: 114

Document References:
- Assignment Dated: 8/25/2009 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST MERIDIAN MORTGAGE, ITS SUCCESSORS AND ASSIGNS to BAYVIEW LOAN SERVICING, LLC A DELAWARE LIMITED LIABILITY COMPANY Recorded: 11/18/2009, Instrument #: 2009000379063

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW LOAN SERVICING, LLC

On: 04/02/2018

Signature:
Name: ESLOAN SOTOLONGO
Title: ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On: 04/02/2018, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING, LLC, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

Rogelio A. Portal

Notary Expires: AUG 2 5 2020 / #: FF993630

ROGELIO A. PORTAL
State of Florida-Notary Public
Commission # FF 993630
My Commission Expires
August 25, 2020

NY/KINGS

Recording Requested By:
NCG 2017 VI LLC

When Recorded Mail To:
NCG 2017 VI LLC
3611 14TH AVE
STE 223C
BROOKLYN, NY, 11218

Loan #:
TS Ref #:
Client R

## CORPORATE ASSIGNMENT OF MORTGAGE

NY/KINGS

Assignment Prepared on: March 23, 2018

ASSIGNOR: BOF II 2011-2NPL, LLC, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

ASSIGNEE: NCG 2017 VI LLC, at _____

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated 5/18/2006, in the amount of $541,800.00, executed by EZEKIEL AKANDE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MERIDIAN MORTGAGE, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS and Recorded: 5/30/2006, Instrument #: 2006000297985 in KINGS County, State of New York.

Property Address: 1588 A PROSPECT PLACE, BROOKLYN, NY, 11233
Block: 1369 / Lot: 114

Document References:
- Assignment Dated: 8/25/2009 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST MERIDIAN MORTGAGE, ITS SUCCESSORS AND ASSIGNS to BAYVIEW LOAN SERVICING, LLC A DELAWARE LIMITED LIABILITY COMPANY Recorded: 11/18/2009, Instrument #: 2009000379063
- Assignment Dated:_____from BAYVIEW LOAN SERVICING, LLC to BOF II 2011-2NPL, LLC To Be Recorded Concurrently.

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BOF II 2011-2NPL, LLC

On: 04/02/2018

Signature:

Name:    DAVID BRIGGS
Title:    FIRST VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On: 04/02/2018, before me, _____Rogelio A. Portal____, a Notary Public in and for MIAMI- DADE in the State of FLORIDA, personally appeared DAVID BRIGGS, FIRST VICE PRESIDENT, BOF II 2011- 2NPL, LLC, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Rogelio A. Portal

Notary Expires: 8/25/20    / #: FF993630

ROGELIO A. PORTAL
State of Florida-Notary Public
Commission # FF 993630
My Commission Expires
August 25, 2020

NY/KINGS

# EXHIBIT B

At a Part IW of the Supreme Court of the
State of New York, held in and for the
County of Kings, at the Courthouse, Civic
Center, Brooklyn, New York on the 3rd day
of October, 2019.

PRESENT: **HON. INGRID JOSEPH**
HON. _____ **JUSTICE OF THE SUPREME COURT** J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X Index No. 26399/2009

NCG 2017 IV LLC,

Plaintiff,

**JUDGMENT OF
FORECLOSURE AND SALE**

- against -

EZEKIEL AKANDE, 1568A PROSPECT PLACE INC., NATIONAL
CITY BANK, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY PARKING VIOLATIONS BUREAU,
NEW YORK CITY TRANSIT ADJUDICATION BUREAU,
NEW YORK STATE DEPARTMENT OF TAXATION AND
FINANCE, H. HOLCOMB, GENE FORSTER, PALIM OLAINDE
Defendants.
-----------------------------------------------------------------X

Foreclosure of:
1568A Prospect Place
Brooklyn, NY 11233
Block: 1369
Lot: 0114

On the Summons, Complaint and Notice of Pendency duly filed in this action on the 19th

day of October, 2009, the Order Granting Summary Judgment, Default Judgment, To Appoint a

Referee and to Amend Caption entered into the Clerk's Office on September 10, 2018 and all

proceedings thereon, and on reading and filing the Affirmation of Samuel Katz, Esq., counsel for

plaintiff, dated the 22 day of January, 2019, from which it appears that each of the defendants

herein have been duly served with the Summons and Complaint in this action, or have

voluntarily appeared personally or by their respective attorneys, and stating that more than the

legally required number of days had elapsed since said defendants were so served and/or

appeared; and that none of the defendants had served any answer to said Complaint except the Defendant Ezekiel Akande, nor had their time to do so been extended; and that the Complaint herein containing all the particulars required to be stated therein was duly filed in the Office of the Clerk of the County of Kings on the 19th day of October, 2009, and Notice of Pendency containing all the particulars required to be stated therein was duly filed in the Office of the Clerk of the County of Kings on the 19th day of October, 2009, and upon a renewal Notice of Pendency filed in the Office of the Clerk of the County of Kings on October 8, 2014 and a renewal Notice of Pendency filed in the Office of the Clerk of the County of Kings on October 10, 2017, and the Complaint has not been amended to add new parties or to embrace real property not described in the original complaint, and a Referee having been duly appointed to compute the amount due to the plaintiff upon the bond/note and mortgage set forth in the Complaint and to examine and report whether the mortgaged premises can be sold in parcels,

AND, on reading the report of Jeffrey Schwartz, Esq., the Referee named in said Order, by which Report, dated the 23rd day of December, 2018, attached hereto, it appears that the sum of $905,043.39 was due as of November 30, 2018, and that the mortgaged premises should be sold in one parcel,

NOW, upon proof of due notice of this application upon all parties who had not waived the same, and upon proof of service of the Order of Reference as provided therein,

ON MOTION of Samuel Katz, Esq. attorney for the plaintiff, it is

ORDERED, that the motion is granted; and it is further

ORDERED, ADJUDGED AND DECREED, that the said Report of Jeffrey Schwartz, Esq., dated December 23, 2018 be, and the same is hereby to the extent provided for herein ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED, that the above-described mortgaged premises or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale and the costs of this action as provided by the Real Property Actions and Proceedings *w/i 90 days from the date of the Judgement* Law be sold, in one parcel, at public auction in Room 224 of Kings County Supreme Court, 360 Adams Street, Brooklyn, New York 11201, on a Thursday afternoon at 2:30 P.M., by and under the direction of Jeffrey Schwartz, Esq. who is hereby appointed Referee for that purpose, that the said Referee shall set the date of sale and give public notice of the time and place of sale in accordance with RPAPL 231 in *Canarsie Courier 1142 E 92nd St Bklyn NY 11236 (718) 257-0600* and it is further

ORDERED, ADJUDGED AND DECREED that said Referee shall accept at such sale the highest bid offered by a bidder, who shall be identified upon the court record, and shall require that such successful bidder immediately pay to the Referee in cash or certified or bank check payable to such Referee, ten percent of the sum bid and shall execute Terms of Sale for the purchase of the premises, unless such successful bidder is the plaintiff herein, in which case, no deposit against the purchase price shall be required, and it is further

ORDERED, ADJUDGED AND DECREED that in the event that the first successful bidder fails to immediately pay the ten percent deposit as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the subject property, the property shall thereafter immediately, on the same day, be reoffered at auction, and it is further

ORDERED, ADJUDGED AND DECREED that the closing of title shall take place at the office of the Referee or at such other location as the Referee shall determine within forty-five days after such sale unless otherwise stipulated by all parties. The Referee shall transfer title only to the successful bidder at the auction. Any delay or adjournment of the closing date beyond forty-five days may be stipulated among the parties, with the Referee's consent, up to ninety days from the date of sale, but any adjournment beyond ninety days may be set only with the approval of this Court, and, it is further

ORDERED, ADJUDGED AND DECREED that the Referee deposit all funds received pursuant to this Order in his/her own name as Referee in _Signature Bank – Court Street, Bklyn NY 11201_ Bank within the City of New York, and it is further

ORDERED, ADJUDGED AND DECREED that said Referee on receiving the proceeds of such sale shall forthwith pay therefrom:

**FIRST**: The statutory fees and commissions of said Referee pursuant to CPLR § 8003 (b) which shall not exceed $500 unless the sale price (the amount of the accepted bid) exceeds $50,000. In the event the sale price exceeds fifty thousand dollars and additional compensation (including commissions) in excess of $500 is sought pursuant to CPLR § 8003(b), and if no surplus monies are produced by the sale, the parties may present a stipulation, signed by the Referee and all parties appearing, agreeing to a stated sum, to be so-ordered by the Court. Where surplus monies will be available following distribution of sums as provided herein, or where the parties are unable to agree to the Referee's proper compensation under CPLR § 8003 (b), application shall be made to this Court on notice to all parties known to be entitled to claim against any surplus monies, including the defaulting owner of the equity of redemption. Such

application shall be promptly submitted to the Court within five days of the transfer of the deed and prior to filing the Report of Sale. The five day period for payment of surplus money into Court as set forth in RPAPL § 1354(4), and the thirty day period set forth in RPAPL § 1355 for the filing of the Report of Sale shall be deemed extended pending the decision of the Court regarding such application.

In the event a scheduled sale is cancelled or postponed, pursuant to CPLR § 8003(a), plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment or cancellation unless the Referee has requested the delay. Such compensation may be recouped from the proceeds of sale as a cost to plaintiff. This Order shall constitute the necessary prior authorization for compensation as set forth herein.

No compensation in excess of $750, including compensation authorized pursuant to CPLR § 8003 (a) for computation of the sum due to plaintiff, may be accepted by the Referee without Court approval and compliance with the filing provisions of Section 36.4 of the Rules of the Chief Judge.

**SECOND**: The expenses of the sale, including the cost of advertising as shown on the bills presented and certified by said Referee to be correct, copies of which shall be annexed to the Report of Sale. The Referee shall not be held responsible for the payment of penalties or fees pursuant to this appointment. The Purchaser shall hold the Referee harmless from any such penalties or fees accessed.

**THIRD**: Pursuant to Real Property Actions and Proceedings Law § 1354, in accordance with their priority according to law, taxes, assessments, sewer rents, water rates and any charges placed upon the property by a city agency which have priority over the foreclosed mortgage,

which are liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment.

**FOURTH**: Said Referee shall then pay to the plaintiff or its attorney the sum of $ 1,500. _JC_ for costs and disbursements in this action to be taxed by the Clerk and inserted herein, with interest from the date hereof, [together with an additional allowance of $ 0 hereby awarded to the plaintiff in addition to costs with interest thereon from the date hereof,] and also the sum of $ 905,08.39 the said amount so reported due as aforesaid, together with interest thereon pursuant to the terms of the Note from November 30, 2018, the date the interest was calculated to in said Report, to the date of entry of this Order, and thereafter at the statutory post-judgment rate to the date of transfer of title, or so much thereof as the purchase money of the mortgaged premises will pay of the same, together with $ 4,750.00 hereby awarded to the plaintiff as reasonable legal fees, together with any advances as provided for in the note and mortgage which plaintiff may have made for taxes, insurance, principal and interest and any other charges due to prior mortgages or to maintain the premises pending consummation of this foreclosure sale, not previously included in the computation, upon presentation to the Referee of receipts for said expenditures, all together with interest thereon pursuant to the note and mortgage as above provided. Copies of such receipts shall be annexed to the Referee's Report of Sale. Plaintiff shall timely move to confirm the Referee's Report of Sale pursuant to RPAPL § 1355. It is further

ORDERED, ADJUDGED AND DECREED that in case the plaintiff be the purchaser of said mortgaged premises at said sale, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver only to the plaintiff a deed of the

premises sold upon the payment to said Referee of the sum awarded to him or her under the above provisions marked "FIRST", "SECOND", and "THIRD" if such expenses were paid by the Referee, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof. The balance of the amount bid, after deducting therefrom the aforementioned payments to the Referee for compensation and expenses, taxes, assessments, sewer rents, water rates, and priority liens of a city agency, shall be allowed to the plaintiff and applied by said Referee upon the amounts due to the plaintiff as specified in item marked "FOURTH". If upon so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to the said Referee, upon delivery to plaintiff of said Referee's deed, the amount of such surplus [which shall be applied by the Referee, upon motion made pursuant to RPAPL § 1351(3) and proof satisfactory to the Referee of the sums due thereon, to any subordinate mortgage duly recorded against the property, pursuant to RPAPL § 1354 (3), which payment shall be reported in the Referee's Report of Sale.] Any surplus remaining after all payments as herein provided shall be deposited into Court in accordance with RPAPL § 1354 (4) and the Referee shall immediately give notice of such surplus to the owner of the mortgaged premises as identified by plaintiff at the time of the sale, and it is further

ORDERED, ADJUDGED AND DECREED that said Referee take the receipt of the plaintiff or plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "FOURTH", and file it with his/her Report of Sale, that he/she deposit the surplus monies, if any, with the Kings County Clerk within five days after the same shall be received unless such period

be deemed extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only upon order of the Court, signed by a Justice of the Court; that said Referee make his/her Report of such Sale under oath showing the disposition of the proceeds of the sale, accompanied by the vouchers of the persons to whom payment was made, and file it with the Kings County Clerk, with a copy to the Chambers of the Appointing Justice, within thirty days after completing the sale and executing the proper conveyance to the purchaser or within thirty days of the decision of the court with respect to any application for additional compensation; and it is further

ORDERED, ADJUDGED AND DECREED, that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff may recover of the defendant(s) EZEKIEL AKANDE the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after the sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceeding Law within 90 days of the delivery of the deed by the Referee, and the amount thereof is determined and awarded by an order of this Court as provided for in said action; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale be let into possession on production of the Referee's deed or deeds; and it is further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action, and all persons claiming under any of them after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title,

interest and equity of redemption in the said mortgaged premises and each and every part thereof;

and it is further

ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in "as is" physical order and condition on the day of sale, subject to any state of facts that an inspection of the premises would disclose, any state of facts that an accurate survey of the premises would show, any covenants, restrictions, declarations, reservations, easements, right of way and public utility agreements of record, any building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same, any rights of tenants or persons in possession of the subject premises, prior liens of record, if any, except those liens addressed in section 1354 of the Real Property Actions and Proceedings law, and any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale. Risk of loss shall not pass to purchaser until closing of title.

ORDERED, that in absence of the Referee, the Court may designate a Substitute Referee forthwith; and it is further

ORDERED, that the Referee appointed herein is subject to the requirements of Rule 36.2(c) of the Chief Judge, and if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the Appointing Judge forthwith; and it is further

ORDERED, that the caption in this action be amended to substitute the name of the Plaintiff as NCG 2017 VI LLC pursuant to CPLR 1018, and that the caption be amended as follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------X Index No. 26399/2009

NCG 2017 IV LLC,

Plaintiff,

- against -

EZEKIEL AKANDE, 1568A PROSPECT PLACE INC., NATIONAL
CITY BANK, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY PARKING VIOLATIONS BUREAU,
NEW YORK CITY TRANSIT ADJUDICATION BUREAU,
NEW YORK STATE DEPARTMENT OF TAXATION AND
FINANCE, H. HOLCOMB, GENE FORSTER, PALIM OLAINDE
Defendants.
-------------------------------------------------------------------X

and it is further,

ORDERED, that a copy of this Judgment with Notice of Entry shall be served upon the

designated Referee, the owner of the equity of redemption as of the date of this Order, any

tenants named in this action and any other party entitled to notice within twenty days of entry

and no less than thirty days prior to sale; and it is further

ORDERED, that the Plaintiff shall serve a copy of the Notice of Sale upon the Owner of

Equity of Redemption at both his/her last known address and the property address (affidavit of

such service shall be presented to the Foreclosure Clerk on or before the auction sale) and upon

the Foreclosure Department at least ten (10) days prior to the scheduled sale.

ENTER:

_____
J.S.C.

HON. INGRID JOSEPH
JUSTICE OF THE SUPREME COURT

Nancy T. Sunshine

NANCY T. SUNSHINE
Clerk

2019 OCT -8 AM 10:52
FILED
KINGS COUNTY CLERK

## SCHEDULE A
## DESCRIPTION OF PREMISES

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

TENTATIVE LOT 114

BEGINNING at a point on the Southerly side of Prospect Place, distant 164.34 feet Easterly from the corner formed by the intersection of the Easterly side of Buffalo Avenue with the Southerly side of Propsect Place; and

RUNNING THENCE Southerly parallel with Buffalo Avenue and part of the distance through a party wall, 127.79 feet;

THENCE Easterly at right angles to the last mentioned course, 36.25 feet;

THENCE Northerly forming an interior angle of 89 degrees 13 minutes 14 seconds with the last mentioned course, 130.08 feet to the Southerly side of Prospect Place;

THENCE Westerly along the Southerly side of Prospect Place, 11.91 feet to the point or place of BEGINNING.

SAID PREMISES KNOWN AS: 1568A Prospect Place, Brooklyn, New York

**EXHIBIT C**

# U.S. Bankruptcy Court
## MIDDLE DISTRICT OF TENNESSEE (Nashville)
## Bankruptcy Petition #: 3:19-bk-00634

| | |
|---|---|
| | *Date filed:* 02/01/2019 |
| *Assigned to:* Charles M Walker | *Date terminated:* 06/10/2019 |
| Chapter 13 | *Debtor dismissed:* 04/01/2019 |
| Voluntary | *341 meeting:* 03/19/2019 |
| Asset | |

*Debtor disposition:* Dismissed for Failure to File Information

| | |
|---|---|
| **Debtor** | represented by **EZEKIEL AKANDE** |
| **EZEKIEL AKANDE** | PRO SE |
| 342 SHADOW CREEK DRIVE | |
| BRENTWOOD, TN 37027 | |
| WILLIAMSON-TN | |
| SSN / ITIN: xxx-xx-8227 | |

**Trustee**
**HENRY EDWARD HILDEBRAND, III**
OFFICE OF THE CHAPTER 13 TRUSTEE
PO BOX 340019
NASHVILLE, TN 37203-0019
615 244-1101

**U.S. Trustee**
**US TRUSTEE**
OFFICE OF THE UNITED STATES TRUSTEE
701 BROADWAY STE 318
NASHVILLE, TN 37203-3966
615 736-2254

| Filing Date | # | Docket Text |
|---|---|---|
| 02/01/2019 | [1](#) (9 pgs) | Chapter 13 Voluntary Petition Individual. Fee Amount is $310.00. Tax Return due by 2/15/2019.Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period Form 122C-1 Due 2/15/2019.Means Test Calculation Form 122C-2 Due: 2/15/2019. Schedule A/B due 2/15/2019. Schedule E/F due 2/15/2019. Schedule J-2 due 2/15/2019. Summary of Assets and Liabilities due 2/15/2019. Incomplete Filings due by 2/15/2019. (Intake3) (Entered: 02/01/2019) |
| 02/01/2019 | [3](#) (1 pg) | Certificate of Credit Briefing for Debtor Filed on the behalf of: Debtor EZEKIEL AKANDE. (Intake3) (Entered: 02/01/2019) |
| 02/01/2019 | 4 | Receipt of Chapter 13 Filing Fee - $310.00 by TB. Receipt Number |

| | | |
|---|---|---|
| | | 620963. (admin) (Entered: 02/01/2019) |
| 02/04/2019 | 5 (2 pgs) | Meeting of Creditors Notice. . Meeting of Creditors to be held on 3/19/2019 at 08:30 AM at Customs House, 701 Broadway, Room 100, Nashville, TN 37203. Deadline to file Proof of Claim is 4/12/2019. Deadline to file Government Proof of Claim is 7/31/2019. Written objections to confirmation must be filed by 3/14/2019. Last day to Object to Confirmation 3/19/2019. Last day to File Complaint to Determine Dischargeability of Certain Debts is 5/20/2019. Confirmation hearing to be held on 4/17/2019 at 08:30 AM at Courtroom 1, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203. (HILDEBRAND, HENRY) (Entered: 02/04/2019) |
| 02/07/2019 | 6 (3 pgs) | BNC Certificate of Notice. (RE: related document(s)5 Meeting of Creditors Chapter 13) Notice Date 02/07/2019. (Admin.) (Entered: 02/08/2019) |
| 03/01/2019 | 7 (3 pgs) | *Trustee's* Motion to Dismiss Case *for Cause for Unreasonable Delay Prejudicial to Creditors*. If timely response hearing will be held on 4/3/2019 at 08:30 AM at Courtroom 1, 2nd Floor Customs House, 701 Broadway, Nashville, TN 37203. Responses due by 3/22/2019. Certificate of Service mailed on 3/01/2019. Filed on the behalf of: Trustee HENRY EDWARD HILDEBRAND III. (HILDEBRAND, HENRY) (Entered: 03/01/2019) |
| 03/26/2019 | 8 (1 pg) | Submitted Order *Dismissing Case* Filed on the behalf of: Trustee HENRY EDWARD HILDEBRAND III (RE: related document(s)7). (HILDEBRAND, HENRY) (Entered: 03/26/2019) |
| 04/01/2019 | 9 (1 pg) | Order Granting *Trustee's* Motion to Dismiss Case *For Cause, For Unreasonable Delay by the Debtor that is Prejudicial to Creditors* for Debtor EZEKIEL AKANDE. (Ref Doc # 7) BY THE COURT: Judge Charles M. Walker (kmw) (Entered: 04/01/2019) |
| 04/03/2019 | 10 (2 pgs) | BNC Certificate of Notice. (RE: related document(s)9 Order on Motion to Dismiss Case - BK Order) Notice Date 04/03/2019. (Admin.) (Entered: 04/04/2019) |
| 05/07/2019 | 11 (3 pgs) | Chapter 13 Trustee's Final Report and Account . (HILDEBRAND, HENRY) (Entered: 05/07/2019) |
| 06/10/2019 | 12 | Final Decree Issued. Chapter 13 case is closed. The estate of the debtor(s) in this case has been fully administered. The Chapter 13 Trustee is discharged as trustee of this estate and any bond required is cancelled. Signed on 6/10/2019. (jjk) (Entered: 06/10/2019) |
| 07/10/2019 | 13 (1 pg) | Certificate of Service mailed on 6/5/2019 *Certificate of Service for Final Report* Filed on the behalf of: Trustee HENRY EDWARD HILDEBRAND III (RE: related document(s)11). (HILDEBRAND, HENRY) (Entered: 07/10/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/03/2020 10:47:32 | | |
| **PACER Login:** | kbarbour:5833354:6114749 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-bk-00634 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT D

**PlnDue, DebtEd, DomSup, Repeat, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Eastern District of New York (Brooklyn)
## Bankruptcy Petition #: 1-19-43483-ess

|  |  |
|---|---|
| | *Date filed:* 06/05/2019 |
| *Assigned to:* Elizabeth S. Stong | *Date terminated:* 09/10/2019 |
| Chapter 13 | *Debtor dismissed:* 07/22/2019 |
| Voluntary | *341 meeting:* 09/04/2019 |
| Asset | |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Ehsanul Habib** |
| **Ezekiel Olukayode Akande** | Law Office of Ehsanul Habib |
| 34 Jackson Place | 118-21 Queens Blvd. |
| Brooklyn, NY 11215 | Suite 603 |
| KINGS-NY | Forest Hills, NY 11375 |
| SSN / ITIN: xxx-xx-8227 | 718-285-0466 |
| | Fax : 718-520-0155 |
| | Email: ehsanulhbb@yahoo.com |

**Trustee**
**Marianne DeRosa**
Office of the Chapter 13 Trustee
100 Jericho Quadrangle
Ste 127
Jericho, NY 11753
(516) 622-1340
Email: Derosa@ch13mdr.com

**U.S. Trustee**
**Office of the United States Trustee**
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
(212) 510-0500

| Filing Date | # | Docket Text |
|---|---|---|
| 06/05/2019 | 1<br>(9 pgs) | Chapter 13 Voluntary Petition for Individuals. Fee Amount $310 Filed by Ehsanul Habib on behalf of Ezekiel Olukayode Akande Government Proof of Claim due by 12/2/2019. (Habib, Ehsanul) (Entered: 06/05/2019) |
| 06/05/2019 | | Receipt of Voluntary Petition (Chapter 13)(1-19-43483) [misc,volp13a] ( 310.00) Filing Fee. Receipt number 18050770. Fee amount 310.00. (re: Doc# 1) (U.S. Treasury) (Entered: 06/05/2019) |

| 06/05/2019 | [2](#)<br>(1 pg) | Certificate of Credit Counseling for Debtor Filed by Ehsanul Habib on behalf of Ezekiel Olukoyode Akande (Habib, Ehsanul) (Entered: 06/05/2019) |
|---|---|---|
| 06/05/2019 | | Meeting of Creditors Chapter 13 & Appointment of Chapter 13 Trustee Marianne DeRosa, with 341(a) Meeting to be held on 07/03/2019 at 10:30 AM at Room 2579, 271-C Cadman Plaza East, Brooklyn, NY . Proof of Claims due by 08/14/2019 . (Entered: 06/05/2019) |
| 06/05/2019 | [3](#)<br>(3 pgs; 2 docs) | Deficient Filing Chapter 13: Statement Pursuant to E.D.N.Y. LBR 1073-2b due by 6/5/2019. Last day to file Section 521(i)(1) documents is 7/22/2019. Disclosure of Compensation of Attorney for Debtor. 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b) (Official Form 2030) due 6/19/2019. Pre-Petition Statement Pursuant to E.D.N.Y. LBR 2017-1 due by 6/19/2019. Summary of Your Assets and Liabilities and Certain Statistical Information Official Form 106Sum due by 6/19/2019. Schedule A/B due 6/19/2019. Schedule C due 6/19/2019. Schedule D due 6/19/2019. Schedule E/F due 6/19/2019. Schedule G due 6/19/2019. Schedule H due 6/19/2019. Schedule I due 6/19/2019. Schedule J due 6/19/2019. Declaration About Ind Deb Schs Form 106Dec due 6/19/2019. Statement of Financial Affairs for Individuals Filing for Bankruptcy Form 107 due 6/19/2019. Chapter 13 Plan due by 6/19/2019. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period Form 122C-1 Due 6/19/2019. Copies of pay statements received from any employer due by 6/19/2019. Incomplete Filings due by 6/19/2019. (ads) (Entered: 06/07/2019) |
| 06/07/2019 | | [Prior Filing](#) Case Number(s): 19-00634 on 2/01/19, Middle District of Tennessee (ads) (Entered: 06/07/2019) |
| 06/07/2019 | [4](#)<br>(6 pgs; 4 docs) | Request for Notice - Chapter 13 Meeting of Creditors and Hearing on Confirmation. Confirmation hearing to be held on 8/5/2019 at 09:00 AM at Courtroom 3585 ( Judge Stong), Brooklyn, NY. Last day to Object to Confirmation 8/5/2019.Objections to 523 due by 9/3/2019. (ads) (Entered: 06/07/2019) |
| 06/09/2019 | [5](#)<br>(3 pgs) | BNC Certificate of Mailing with Notice of Electronic Filing Notice Date 06/09/2019. (Admin.) (Entered: 06/10/2019) |
| 06/09/2019 | [6](#)<br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors Notice Date 06/09/2019. (Admin.) (Entered: 06/10/2019) |
| 06/09/2019 | [7](#)<br>(3 pgs) | BNC Certificate of Mailing with Notice of Deficient Filing Notice Date 06/09/2019. (Admin.) (Entered: 06/10/2019) |
| 06/10/2019 | [8](#) | Notice of Appearance and Request for Notice Filed by Jeremy S |

| | | |
|---|---|---|
| | (2 pgs) | Sussman on behalf of SRP 2012-4 LLC (Sussman, Jeremy) (Entered: 06/10/2019) |
| 06/13/2019 | [9](#) (2 pgs) | Notice of Appearance and Request for Notice Filed by Jeremy S Sussman on behalf of SN Servicing Corporation, as servicer for SRP 2012-4 LLC (Sussman, Jeremy) (Entered: 06/13/2019) |
| 07/09/2019 | [10](#) (2 pgs; 2 docs) | Final Notice of Section 521 Deficiencies (ads) (Entered: 07/09/2019) |
| 07/09/2019 | | Statement Adjourning 341(a) Meeting of Creditors to 9/4/2019 at 01:00 PM at Room 2579, 271-C Cadman Plaza East, Brooklyn, NY. (DeRosa, Marianne) (Entered: 07/09/2019) |
| 07/11/2019 | [11](#) (2 pgs) | BNC Certificate of Mailing with Final Notice of Section 521 Deficiencies Notice Date 07/11/2019. (Admin.) (Entered: 07/12/2019) |
| 07/22/2019 | [15](#) (2 pgs; 2 docs) | Case Automatically Dismissed pursuant to 11 U.S.C. Section 521(i)(1) with Notice of Automatic Dismissal Sent to Debtor (ads) (Entered: 07/31/2019) |
| 07/23/2019 | [12](#) (1 pg) | Request for Judicial Determination Concerning Dismissal Pursuant to 11 U.S.C. Section 521(i) (RE: related document(s)[10](#) Final Notice of Section 521 Deficiencies) (ads) (Entered: 07/23/2019) |
| 07/23/2019 | [13](#) (2 pgs; 2 docs) | Notice of Appearance and Request for Notice Filed by Aleksandra Krasimirova Fugate on behalf of Wells Fargo Bank, N.A. as servicing agent for HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Mortgage Pass-Through Certificates, Series 2006-AR4 (Attachments: # [1](#) Certificate of Service) (Fugate, Aleksandra) (Entered: 07/23/2019) |
| 07/30/2019 | [14](#) (1 pg) | Order Directing Clerk's Office to dismiss this case pursuant to 11 U.S.C. 521(i)(1). (RE: related document(s)[12](#) Request for Judicial Determination Re: 521 Documents). Signed on 7/30/2019 (ads) (Entered: 07/31/2019) |
| 08/02/2019 | [16](#) (2 pgs) | BNC Certificate of Mailing with Notice of Automatic Dismissal of Case Notice Date 08/02/2019. (Admin.) (Entered: 08/03/2019) |
| 09/06/2019 | [17](#) (2 pgs) | Chapter 13 Trustee Final Report and Account for Dismissed Case. (DeRosa, Marianne) (Entered: 09/06/2019) |
| 09/10/2019 | [18](#) (2 pgs; 2 docs) | Order to Close Automatically Dismissed Case (ch13c4dsm) (Entered: 09/10/2019) |
| 09/10/2019 | | Close Bankruptcy Case (ch13disms) (Entered: 09/10/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/03/2020 11:46:40 | | |
| **PACER Login:** | kbarbour:5833354:6114749 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1-19-43483-ess Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT E

SUPREME COURT. COUNTY OF KINGS. NCG 2017 IV LLC, Pltf. vs. EZEKIEL AKANDE, et al, Defts. Index #26399/2009. Pursuant to judgment of foreclosure and sale entered October 8, 2019, I will sell at public auction in Room 224 of the Kings County Supreme Court, 360 Adams St., Brooklyn, NY on December 5, 2019 at 2:30 p.m. prem. k/a 1568A Prospect Place, Brooklyn, NY a/k/a Block 1369, Lot 0114. Said property beginning at a point on the Southerly side of Prospect Place, distant 164.34 ft. Easterly from the corner formed by the intersection of the Easterly side of Buffalo Avenue with the Southerly side of Prospect Place; being a plot 127.79 ft. x 36.25 ft. x 130.08 ft. x 11.91 ft. Approx. amt. of judgment is $905,043.39 plus costs and interest. Sold subject to terms and conditions of filed judgment and terms of sale. JEFFREY H. SCHWARTZ, Referee. LAW OFFICE OF SAMUEL KATZ, Atty. For Pltf., 4533 16th Avenue, Brooklyn, NY. #97901